**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Bell, <br><br> Plaintiff, <br><br> v. <br><br> VF Jeanswear LP, *et al.*, <br><br> Defendants. | No. CV-14-01916-PHX-JJT <br><br> **ORDER** |

At issue are Plaintiff's Motion for Attorney Fees and Related Non-Taxable Expenses (Doc. 248); her Supplemental Motion for Attorney Fees (Doc. 274); and her Addendum to Supplemental Fee Application (Doc. 280). Defendant filed Responses (Docs. 259, 277, 281) in opposition to each of the above, respectively, and Plaintiff filed Replies (Docs. 266, 279, 282) in support of each, respectively. Both parties filed multiple memoranda, declarations and other attachments in support of their motion practice, which the Court has read and considered thoroughly. The Court finds the matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). It grants in part and denies in part Plaintiff's Motion and Supplemental Motion as set forth below.

**I.      Relevant Procedural History**

In her First Amended Complaint, Plaintiff alleged five causes of action: 1) violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 215 *et seq*.,; 2) retaliation under the EPA; 3) Sex discrimination in violation of 42 U.S.C. § 2000e ("Title VII claim"); 4) Age discrimination in violation of 29 U.S.C. § 623 ("ADEA claim"); and 5) violation of the Arizona Wage Act, A.R.S. § 23-353 ("AWA claim"). The Court granted Defendant

summary judgment on Plaintiff's retaliation and ADEA claims. (Doc. 108.) After a trial from March 21 to 31, 2017, a jury found that Defendant violated Title VII by discriminating against Plaintiff, its former employee, on the basis of sex and awarded Plaintiff a total of $528,000 in damages at law. (Doc. 204.) The jury found for Defendant on Plaintiff's Equal Pay Act and Arizona Wage Act claims. (Doc. 204.)

The Court then held a three-day bench trial between May 4 and 11, 2017, after which the Court entered an Order setting forth its findings of fact and conclusions as to Plaintiff's equitable damages for Defendant's violation of Title VII. (Doc. 243, Damages Order.) The Court also limited the $528,000 jury award of compensatory and punitive damages to $300,000, as provided by 42 U.S.C. § 1982a(b)(3). In sum, the Court determined that Plaintiff was entitled to $300,000 in compensatory and punitive damages and $206,928.06 in equitable damages.

Plaintiff filed the instant motions seeking a total of $1,963,319.25 in attorneys' fees and related non-taxable expenses, comprised of $1,860,836.75 (Doc. 250, Application), $92,019.50 (Doc. 274, Supplement), and $10,463.00 (Doc. 280, Addendum).[1]

**II.   Law and Analysis**

As Plaintiff prevailed on her Title VII sex discrimination claim, Defendant does not dispute that she is entitled to an award of reasonable attorneys' fees. The Court will spare recitation of the case law applicable to Plaintiff's eligibility for the award and move directly to determining what the reasonable fees are.

The Court must follow a multi-step process to determine a reasonable amount of attorneys' fees. The Court begins by applying the so-called "lodestar formula" to determine a baseline for reasonable fees through the mechanics described below. The Court then evaluates that lodestar product for overall reasonableness in light of the results obtained, all pursuant to *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939 (1983).

**A.   Lodestar Calculation**

---

[1] Plaintiff also seeks taxable costs of $10,320.72.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 103 S.Ct. at 1939; *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Defendant does not challenge the hourly rates charged for any of the attorneys involved in the representation of Plaintiff, and the Court finds in any event that such rates are appropriate. Defendant does challenge the reasonableness of the hours expended in the representation overall and regarding several specific tasks.

The Court includes in what the Supreme Court in *Hensley* called the "initial fee calculation" only those hours that were "reasonably expended." 103 S. Ct. at 1139. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)(citing *Hensley*); *Jankey v. Poop Deck,* 537 F.3d 1122, 1132 (9th Cir. 2008)(same).

Determining the number of hours that were reasonable may be done in several ways, including via task-based analysis or an across-the-board formula. "The court is not required to set forth an hour-by-hour analysis of the fee request." *Schwartz v. Secretary of Health & Human Services*, 73 F.3d 895, 906 (9th Cir. 1995)(internal citations and quotations omitted). This is particularly true when the court is faced with a massive fee application.[2] "A request for attorney's fees should not result in a second major litigation." *Hensley*, 103 S. Ct. at 1941. The Court here addresses some billing issues by specific task and some across the board.

The Court agrees with Defendant that the fees Plaintiff seeks for the iterations of attorney fee petitions and supporting briefing bear particularized scrutiny. While "fees on fees" are allowable as part of a prevailing party's award, the time expended to craft and

---

[2] The Court's characterization of the application in this case as "massive" is quite literally true. The aggregate materials submitted by all parties in support of or opposition to the fee applications in this matter, once printed out, weigh 14.2 lbs. The Court's consideration and resolution of the fee applications here was long-delayed in large part due to the amount of time required to read and consider the voluminous materials, which were primarily from Plaintiff.

support the petition and briefs must itself be reasonable, and here it was not. Plaintiff's counsel spent over 425 hours—the equivalent of ten and a half standard work weeks—on the original fee petition, and another approximately twenty hours on its addendum. All of this time resulted in requested attorney/paraprofessional fees of approximately $183,000. In comparison to the scope of the matter and what it took Plaintiff's counsel to litigate it in its entirety, this is grossly excessive. The Court will allow one standard week of attorney time, at Mr. Katz's agreed rate in this case of $510.00 per hour, and 20 hours of paraprofessional time at Mr. Kravitz's agreed rate of $200.00 per hour for the fee petition preparation task. This totals $24,400. Accordingly, the Court will reduce the fee award by $158,600 to trim the portion of the fee sought for the fee petition litigation.

The Court also finds unreasonable a number of hours expended by Plaintiff attempting, unsuccessfully, to re-litigate various issues the Court previously had decided throughout the case, at great cost in terms of time ultimately billed and now part of the instant application. There are many instances of this recurring practice by Plaintiff during the course of this matter; the Court cites only a representative sampling. As Defendant noted in its Response to the fee application (Doc. 259 at 3), after careful analysis and in a lengthy Order addressing the parties' cross-motions for summary judgment, the Court had ruled against Plaintiff on issues relating to her constructive discharge claim. Plaintiff thereafter filed a Motion for Reconsideration of that ruling (Doc. 110), arguing the Court had committed manifest error in essentially every ruling that went against Plaintiff, and seeking clarification on some points of the ruling. The Court granted the motion to the extent Plaintiff sought clarification, but otherwise denied it, painstakingly demonstrating how each of the purported assignments of "manifest error" were ungrounded in law. Billing records submitted with the instant application indicate that Plaintiff spent nearly 31 hours of attorney time on the preparation of that futile motion alone, and now seeks approximately $15,000 for it.

After trial, Plaintiff filed a Motion Under FRCP 52(b) to Amend Findings, Conclusions and Judgment (Doc. 254), again asserting "manifest, substantial and materials

errors" in the Court's rulings on the extent of equitable relief it awarded her. The Court denied the motion in whole, again noting a lack of merit in the arguments Plaintiff presented.[3] (Doc. 28.) The Motion and supporting materials filed by Plaintiff, including Reply, comprised nearly 280 pages, and Plaintiff's counsel and associated staff spent approximately 97 hours working on it, resulting in discrete fees sought of approximately $34,000.[4] The motion was unnecessary and futile. It also required opposing counsel to spend time and their client's treasure responding, and then required the Court to spend substantial and valuable time reviewing the voluminous materials, evaluating the arguments and drafting an involved Order disposing of the motion. This is the definition of protracted litigation, and while it is a good example of actions Plaintiff took to draw out this matter without contributing to her success, it is far from isolated. As the Court indicated in a prior Order, and by way of another example, by the conclusion of this litigation the parties had briefed the same arguments related to a single damages issue no less than 14 times. (Doc. 284 at 3.)[5] Additionally, Plaintiff's counsel took the opportunity to contest practically every issue, no matter how inconsequential before and during the trial, at one point even objecting to and arguing against his own proposed final jury instruction. (Tr. 3/29/17 at 1601:10-18.)

The Court "may consider whether Plaintiff protracted the litigation in deciding whether to reduce fees." *Jankey*, 537 F.3d at 1132. The Court has so considered here, and concludes that, in the examples set forth above and in several other instances, Plaintiff quite

---

[3] "In her present Motion, Plaintiff has presented nothing new, and it should thus come as no surprise to Plaintiff that the Court's findings remain the same now." (Doc. 284 at 2.)

[4] The Court is unable to calculate a precise figure for fees sought to prepare the motion, because a handful of very large billing entries comprised block billing that encompasses this and other tasks. In calculating the fee total associated with the Rule 52(b) motion, then, the Court figured conservatively and allocated only one fourth of the amounts in the block entries to the task at issue.

[5] The Court recognizes these 14 visitations of the same issue are the result of both Plaintiff's and Defendant's briefing combined. However, it is Plaintiff, and not Defendant, who is seeking attorneys' fees, and it is therefore germane to consider Plaintiff's share of the contribution toward protracting this litigation.

substantially protracted the litigation. Although the Court has calculated with fair precision the costs of the protraction in a few discrete instances above, it will not do so for each instance in the entire case. Rather, the Court will apply a general percentage reduction for unreasonable hours expended. *See Schwartz*, 73 F.3d at 906 ("When faced with a massive fee application the district court has authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application."). The Court will reduce the hours for the remainder of the application beyond the fees-on-fees aspect, which it already has addressed, by 40 percent, or $712,127.70, leaving an amount of $1,068,191.55.[6] Adding back in the $24,400 the Court has allowed for preparing the fee application, addenda and supporting materials, the initial fee calculation according to the lodestar figure, adjusted for exclusion of excessive hours, is $1,092.591.55.

### B. Overall Reasonableness of the Lodestar Product in Light of the Results Obtained

As directed by the Supreme Court in *Hensley*, the step taken above—formulation of the Lodestar figure that reflects the product of a reasonable hourly rate and non-excessive hours—focuses on efficiency and billing judgment. 103 S. Ct. at 1940 ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.")(internal citations omitted). The second component of the fee determination process—evaluating the Lodestar figure in light of the results obtained—addresses concerns of equity and limited notions of proportionality. It is intended to keep a defendant from becoming the guarantor of a prevailing plaintiff's fees for whatever unlimited tasks that plaintiff's counsel decides to undertake, no matter how

---

[6] Plaintiff's total request for fees and non-taxable expenses is $1,963,319.25. The Court has discretely addressed that component of the application associated with fees-on-fees, originally totaling $183,000. Thus the across-the-board percentage cut to hours reasonably expended will apply only to the residual $1,780,319.25 of the request not previously addressed. Forty percent of that amount is $712,127.70; sixty percent is $1,068.191.55.

unrelated to the prevailing claim or how disproportionate the effort and resulting expense are to the result obtained. *Id*. ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'").

"That the plaintiff was a 'prevailing party' []may say little about the whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id*. at 1941. Thus the district court "should focus on the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 1940; *Chaudry v. Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014)(The district court may consider "the degree of success achieved by the prevailing party.").

The Ninth Circuit has set forth the standard to apply in evaluating degree of success and results obtained. "Where a plaintiff prevails on some claims and not on others in an employment discrimination case, the court must engages in a two-part analysis in awarding attorneys' fees . . . . First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995). Second, the court "evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. If the plaintiff obtained excellent results, full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be excessive. Such decisions are within the court's discretion." *Id*.

### 1. Relatedness of Unsuccessful Claims to Successful Claims

"A plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each contention raised." *Schwartz*, 73 F.3d at 906 (citing *Hensley*, 103 S. Ct. at 1943). Rather, as set forth in *Odima, supra*, the Court must determine whether the claims on which Plaintiff failed to prevail were

related or unrelated to the claims on which she succeeded. *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009).

Plaintiff brought five claims against Defendant. The Court terminated her retaliation and ADEA claims on summary judgment, and the jury returned a verdict in favor of Defendant on Plaintiff's Equal Pay Act and Arizona Wage Act claims. The Court must determine whether Plaintiff's unsuccessful ADEA, retaliation, Equal Pay Act and Arizona Wage Act claims, or any of them, are related to her successful Title VII sex discrimination claim.

Related claims involve a common core of facts or will be based on related theories. *Odima*, 53 F.3d at 1499. "At bottom, 'the focus is on whether the unsuccessful claims arose out of the same course of conduct." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)(internal quotations and citations omitted). Defendant urges in its Response Memorandum that few or none of Plaintiff's unsuccessful claims are related to the successful Title VII discrimination claim because they did not arise from a core of facts or legal theories common to the discrimination claim. (Doc. 259 at 15 *et seq*.) The Court disagrees.

"There is no certain method of determining when claims are unrelated or unrelated." *Hensley*, 103 S. Ct. at 1941 n.12; *Schwartz*, 73 F.3d at 902-03. But the applicable law of the Ninth Circuit provides for a broader interpretation of "relatedness" of claims than Defendant here argues. "Even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991); *Schwartz*, 73 F.3d at 903 (quoting *Cabrales*). The Ninth Circuit addressed a factually similar issue in *Odima*, where the plaintiff had been successful on his Title VII claim but unsuccessful on his retaliation, constructive discharge, wrongful termination and intentional infliction of emotional distress claims. 53 F.3d at 1488. The court in *Odima* held that where all of the plaintiff's unsuccessful claims, including his state tort claims, arose from his employment relationship

with Westin, that fact was sufficient to conclude as a matter of law that all of his claims arose from a common core. *Id.* at 1499.

Similarly in this case, all of Plaintiff's unsuccessful claims arose from her employment relationship with Defendant, and indeed, were predicated on the same or related employment decisions Defendant made that aggrieved Plaintiff. In light of the facts of this case and the above case law, which ensures that a full analysis of the relationship between the fee awarded and the results obtained will occur in the next step of the evaluation process, the Court finds that each of Plaintiff's unsuccessful claims are related to her successful discrimination claim pursuant to *Odima*. The Court will order no reduction to the Lodestar figure based on the unsuccessful related claims.

### 2. Significance of Overall Relief Compared to Hours Reasonably Expended

The final step of the fee analysis requires the Court to answer the following question: Did Plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *See McCown*, 565 F.3d at 1103. The Court has discretion to make a downward adjustment to the components or the product of the lodestar calculation for the "results obtained" in the litigation, "which is a particularly crucial factor where a plaintiff is deemed prevailing even though she succeeded on only some of her claims for relief." *Schwartz*, 73 F.3d at 901 (citing *Hensley*). Defendant has requested such an adjustment on the basis of the limited nature of the relief obtained by the Plaintiff; thus the Court has considered the relationship between the amount of the fee awarded and the results obtained as required by *Hensley*, 103 S. Ct. at 1941.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this would encompass all hours reasonably expended on the litigation and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. at 1940. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the

plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Id.* at 1941; *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Therefore "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 103 S.Ct. at 1931; *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 808 (9th Cir. 1994)(While a "pro rata distribution of fees makes no sense" where degree of success was limited, "the district court must reduce the attorneys' fee award so that it is commensurate with the extent of the plaintiff's success.").

Plaintiff has addressed this prong of the analysis in her briefing, citing features of the jury's verdict and the Court's equitable award to support her argument that she achieved excellent results and is thus at least entitled to the reasonable Lodestar product without further reduction. She notes that the jury's verdict on her sex discrimination claim, by its nature, is a marked success because it vindicates not only her own interest but society's interest in having employers comply with federal law and policy. Plaintiff also argues that in addition to the jury's ultimate award of $300,000 in damages at law, the Court awarded her $206,928.06 in equitable relief, of a total award of over half a million dollars.

The Court agrees that Plaintiff's success at the jury trial phase of the matter was substantial—in fact, on her discrimination claim Plaintiff could have done no better, as Title VII imposes a cap on the sum of compensatory and punitive damages of $300,000 per plaintiff for a corporation of Defendant's size. 42 U.S.C. § 1981a(b)(3). But that is only part of what the Court must consider under this prong of analysis.

In judging a plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should "give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 113 S.Ct. 566 (1992); *see also McCown*, 565 F.3d at 1104. And the great majority of the economic relief Plaintiff sought in this matter was in equitable damages as tried directly to the Court. While

Plaintiff's possible damages at law were limited to $300,000—which the parties knew coming into the litigation—her possible equitable damages were not so limited, and Plaintiff accordingly sought, attempted to prove, and argued for over $1.4 million in back pay, front pay and related relief. After another three-day bench trial and several rounds of briefing on equitable damages, the Court awarded Plaintiff just over $200,000 in back pay and no front pay. On the predominating issue of equitable relief, then, and by the metric as set forth in *Farrar* and *McCown*, Plaintiff was far less successful.

Defendant observes in its brief that Plaintiff obtained only about fourteen percent of the equitable relief she sought. But Defendant does not, and could not, argue for a directly proportional reduction in requested fees. "A rule of proportionality is inappropriate [] because it fails to recognize the nature of many, if not most, civil rights cases, in which damages may be limited by law, regardless of the importance of the civil rights at issue. *City of Riverside v. Rivera*, 106 S. Ct. 2686, 2697 (1986).[7] Rather, Defendant's observation is germane and persuasive in the general sense, as it relates to the core question of efforts exerted—and billed for—in light of results obtained marked against results sought.

"There is no precise formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 103 S. Ct. at 1941. The Ninth Circuit has held that a district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce the fee award to account for limited success. *Schwartz*, 73 F.3d at 905; *see also Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

The Court will apply such a formula in the present case and reduce the fee award to account for limited success, as manifested in the resultant awards as compared to the relief

---

[7] Indeed such was the case here, where the jury's larger compensatory and punitive damages awards of $28,000 and $500,000, respectively were remitted down to $300,000 in aggregate by operation of Title VII.

- 11 -

sought in all claims. The formula will account for Plaintiff's success in receiving a favorable verdict on her discrimination claim, her complete success in receiving the maximum amount of damages at law allowable on that single successful claim, and her much less successful litigation of the equitable remedies, which represented the far larger amount of relief available and sought, as well as a significant amount of the preparation hours expended by Plaintiff's counsel throughout the litigation.

Upon careful and lengthy consideration of the factor first announced in *Hensley* and *Farrar* and as implemented in the Ninth Circuit in *Dang* and *McGinnis*, the Court will reduce the lodestar amount by a factor of forty-five percent, or $491,666.20. The Court finds reasonable attorneys' fees and non-taxable expenses in this matter to be $600,925.35. Although this figure is slightly greater than the combined damages award at law and at equity in this matter, the Court finds it appropriate in light of the clear holding of *Riverside*, 106 S. Ct. at 2697.

The Court sees no basis to reduce as unreasonable or unjustified the $10,320.72 in taxable costs sought by Plaintiff in this matter.

For the reasons set forth above,

**IT IS ORDERED** granting in part and denying in part Plaintiff's Motion for Attorney Fees and Related Non-Taxable Expenses (Doc. 248) and her Supplemental Motion for Attorney Fees (Doc. 274).

**IT IS FURTHER ORDERED** awarding Plaintiff $600,925.35 in attorneys' fees and non-taxable expenses in this matter, and $10,320.72 in taxable costs.

Dated this 28th day of March, 2019.

Honorable John J. Tuchi
United States District Judge